**FILED**
**Jun 21, 2022**
**02:58 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **Melanie Burns-Herrera,** | ) | **Docket No. 2021-06-0175** |
| **Employee,** | ) | |
| **v.** | ) | |
| **State Industries, LLC,** | ) | **State File No. 107705-2019** |
| **Employer,** | ) | |
| **And** | ) | |
| **Sentry Ins., a Mutual Company,** | ) | **Judge Kenneth M. Switzer** |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER

In the words of one physician in this case, medicine is both an art and a science, and the answers are not always clear. As an example, in this case, two well-qualified orthopedic surgeons have reached opposite conclusions regarding whether surgery is appropriate to treat Melanie Burns-Herrera.

Ms. Burns-Herrera seeks an order compelling State Industries to authorize surgery with Dr. Matthew Willis, a physician of her choosing. State Industries counters that the procedure is not advisable, based on the opinion of the treating physician, Dr. Jason Haslam.

After an expedited hearing on June 15, 2022, the Court holds that Ms. Burns-Herrera is entitled to undergo the recommended surgery. If Dr. Haslam is unwilling to perform it, State Industries must provide a panel of orthopedists willing to treat Ms. Burns-Herrera.

### Claim History

Ms. Burns-Herrera suffered a work injury to her right shoulder on October 15, 2019. State Industries authorized treatment, and she chose Dr. Haslam from a panel of physicians.

Dr. Haslam saw her approximately monthly beginning in January 2020. He diagnosed impingement syndrome, recommended physical therapy, injected the shoulder,

1

and prescribed medication. These measures provided no relief, so Dr. Haslam performed surgery, specifically, a right-shoulder arthroscopy with subacromial decompression, on March 24.

Dr. Haslam saw nothing unusual post-operatively at the next three visits, but Ms. Burns-Herrera continued to experience pain and reduced range of motion. In June, he injected the shoulder and placed her on modified duty.

At a July visit, Dr. Haslam first saw evidence of adhesive capsulitis, otherwise known as a "frozen shoulder." His notes characterize the condition as "an unfortunate side effect from surgical intervention." Dr. Haslam explained at his deposition that this means the covering of her shoulder joint became inflamed, causing pain and limited range of motion.

In August and September, he injected the shoulder. At the latter visit, Dr. Haslam also placed Ms. Burns-Herrera at maximum medical improvement and assigned a seven-percent impairment rating. Notes from that visit do not mention surgery as a treatment option. Ms. Burns-Herrera returned in October and received another injection. Dr. Haslam wrote, "I have no further treatment for the patient[.] . . . I believe she should get a second opinion regarding possible further treatment options."

Ms. Burns-Herrera then sought treatment on her own with Dr. Matthew Willis. Her first visit in December was with physician assistant, Dana Duff, who sent her for an MRI. When she returned later that month, Ms. Burns-Herrera saw physician assistant Austin Bragdon, who reviewed the MRI results and recommended surgery.

After the recommendation, Ms. Burns-Herrera returned to Dr. Haslam in January 2021, and they discussed surgery. He testified that he did not recommend it at that time: "Because the prognosis for frozen shoulder is good. If you don't do surgery, it's good. If you do surgery, it's relatively good. So I tell my family members and my patients, if you have a good outcome and it's a good prognosis, avoid doing surgery." He also said that additional surgery would be painful and that he did not want her to go through that again. This was Ms. Burns-Herrera's final visit with Dr. Haslam, at which time he wrote that he would see her back as needed.

On cross-examination, Dr. Haslam agreed that he did not order a post-operative MRI and that he had not seen the MRI report that Dr. Willis's staff ordered. Dr. Haslam acknowledged that his notes do not mention surgery as an option until January 2021, but he said it came up before then and added, "Remember I'm a surgeon. I like to operate." He further testified that surgery is an option to treat adhesive capsulitis, and it can provide relief to patients. In fact, Dr. Haslam has performed it "many times," and ninety-five percent of patients will recover without any long-term deficits to their shoulders, he said.

2

Dr. Haslam conceded that physically, Ms. Burns-Herrera would probably tolerate another surgery well. He agreed that practicing medicine is an art and science.

Dr. Haslam testified that he told Ms. Burns-Herrera the following:

Everybody gets better from frozen shoulder. We can do surgery on it and you may get your range of motion faster, but you may have a lot of pain for a very long time. That time frame of pain may not actually get better. It may take another year and a half for your pain to get better. Will you get better motion? Probably, because we're going to cut up the capsule so, yeah, you might get better motion. But I promise you, it's a painful operation.

As for Dr. Willis, he testified that he first saw Ms. Burns-Herrera in June 2021. He examined her and recorded her reduced range of motion. He said that he reviewed all of Dr. Haslam's records, so he was aware that she received many injections—more than he would have recommended—and attempted physical therapy many times with little relief. Dr. Willis said that her post-surgery pain and stiffness should have resolved by then. He explained the surgery recommendation as follows at his deposition:

She's motivated, she's in a lot of pain. She has an objectively stiff shoulder after surgery. The overwhelming of those do well after a release. She has a clear anatomic problem that would benefit from additional surgery and has failed very extensive conservative measures since her surgery. So she really checks all the boxes.

Dr. Willis testified that the capsulitis resulted directly from Ms. Burns-Herrera's surgery and that she did not have motion deficits before it. Dr. Willis said that the risks of the proposed surgery were low, with only a five-percent risk that her shoulder stiffness would worsen. Dr. Willis acknowledged the doctors' professional difference of opinion by agreeing that "two skilled and knowledgeable physicians can differ on the treatment plan that they recommend." Ms. Burns-Herrera returned to Dr. Willis in January 2022, and Dr. Willis repeated the surgery recommendation.

For her part, Ms. Burns Herrera, who is right-handed, testified that her work injury has affected her daily living. She can no longer reach items from the top shelf in her refrigerator. She needs assistance to hook her bra or get in and out of the bathtub. She cannot participate in past hobbies: riding motorcycles and "work[ing] on cars." Ms. Burns-Herrera said she underwent injections six times under Dr. Haslam's care, but she declined the last one he offered because they were not helping. Ms. Burns-Herrera testified that she "was fine" with Dr. Haslam's treatment at first but no longer trusts him and would not feel comfortable with further treatment from him.

3

**Findings of Fact and Conclusions of Law**

At an expedited hearing, Ms. Burns-Herrera must show she would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2021).

Tennessee Code Annotated section 50-6-204(a)(1)(A) states that an employer shall furnish, free of charge to the employee, "medical and surgical treatment . . . made reasonably necessary" by the work accident. Here, the experts agree that the adhesive capsulitis resulted from the previous surgery but disagree on the next step. Dr. Haslam believes the capsular release is not reasonably necessary; Dr. Willis believes it is.

As an initial issue, the parties disagreed in their briefs whether any presumption is afforded to Dr. Haslam. The Workers' Compensation Law reads, "Any treatment recommended by a physician . . . selected pursuant to [section 50-6-204(a)(3)] or by referral, if applicable, shall be presumed to be medically necessary for treatment of the injured employee." Ms. Burns-Herrera asserted that this does not apply, and the Court agrees. Dr. Haslam, the authorized treating physician, has made no active treatment recommendation. By his own words, he has "no further treatment." Stated another way, when last consulted in January 2021, he recommended nothing but time.

Moreover, in *Endsley v. Benchmark Contractors, LLC,* an authorized treating physician recommended no treatment and disagreed with another physician who provided a second opinion recommending surgery. The employer had authorized the second-opinion physician. The Appeals Board concluded that the initial authorized physician "did not *recommend* treatment but offered an opinion that surgery recommended by another physician was not necessary." 2017 TN Wrk. Comp App. Bd. LEXIS 47, at *7 (Aug. 11, 2017) (emphasis in original). The Board explained:

> The statute provides that treatment recommended by an authorized doctor is presumed to be medically necessary, but makes no mention of whether an authorized physician's opinion about the medical necessity of treatment recommended by *another* doctor is entitled to that same presumption. Thus, by the express terms of this subsection, an opinion of one physician concerning treatment by another physician does not qualify for the presumption described in subsection 204(a)(3)(H).

*Id.* at *7-8 (emphasis in original).

The Court agrees with State Industries that the facts of this case and *Endsley* are not identical. But the salient facts correlate—specifically, an authorized physician recommended taking no action and commented on another physician's surgery recommendation. Whether the other physician was compensated by the employer or employee is immaterial. The question of whether Dr. Haslam has "relinquished care," which he has not, is also irrelevant.

Instead, the Court must weigh the competing expert opinions with no presumption. In determining which to accept, the Court can consider, among other things, the qualifications of the experts, the circumstances of their examination, the information available to them, and an evaluation of the importance attached to the information by other experts. *Bass v. The Home Depot U.S.A., Inc*., 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017).

Looking at the first factor, the Court finds both experts are well-qualified. This consideration favors neither physician.

As to the circumstances of their examination, State Industries contended that this factor favors Dr. Haslam because he saw and examined Ms. Burns-Herrera more often, while Dr. Willis saw and examined her twice, after his physician assistants first saw her. In State Industries' view, not only did Dr. Haslam see her more often, but also, *the physician assistants* made the surgery recommendation.

The Court disagrees. It is true that Dr. Haslam saw Ms. Burns-Herrera twelve times, while Dr. Willis saw her twice. Dr. Willis explained the work dynamics of his office in his testimony, namely that he and the physician assistants work together and confer often. More important though, Dr. Willis actually examined Ms. Burns-Herrera and recorded objective test results in June 2021, to confirm the previous surgery recommendation, which he reaffirmed most recently in January 2022. In his testimony, Dr. Willis maintained that ultimately the recommendation was his. This factor—the circumstances of the examination—likewise favors neither physician.

As to the information available to them, Dr. Haslam testified that he did not see the results of the MRI ordered by Mr. Duff. This factor favors Dr. Willis because he saw the more complete picture.

Regarding the importance of that information attached by other experts, both doctors essentially agreed that two skilled physicians can reach differing conclusions. This factor favors neither.

In addition to considering the *Bass* factors, live testimony by a lay witness may influence the trier of fact in the consideration of expert medical proof. *Caskey v. Powers Pizza, LLC*, 2015 TN Wrk. Comp. App. Bd. LEXIS 37, at *9 (Oct. 7, 2015). Ms. Burns-Herrera credibly testified that she has difficulty with daily activities such as reaching for items and dressing herself without assistance. She also cannot enjoy her previous hobbies. The Supreme Court has consistently held that an employee's assessment as to his or her own physical condition is competent testimony that is not to be disregarded. *Limberakis v. Pro-Tech Sec., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *5-6 (Sept. 12, 2017).

Here, Ms. Burns-Herrera complied with all of Dr. Haslam's conservative treatment recommendations. When he finally had nothing else to offer, on his advice, she reasonably consulted another physician, who recommended a capsular release.

Dr. Haslam first diagnosed the adhesive capsulitis in July 2020. He wrote that he had no further treatment starting in September 2020. He testified that time would remedy her symptoms. But, as Ms. Burns-Herrera argued, it has been "two years, two months, and twenty-four days" since the initial surgery, and her symptoms remain. To date, Dr. Haslam's prediction simply has not come to fruition, and it is well past his suggested time frame for improvement. As Dr. Willis stated, she is motivated to undergo surgery, and all other options have been exhausted.

Moreover, while State Industries is concerned that the surgery will be unsuccessful, both doctors placed the risk very low, just five percent. The Court is likewise unpersuaded by the contention that Ms. Burns-Herrera's private insurance is willing to cover the procedure, since the physicians in this case have agreed that the surgery performed to treat the work injury caused her adhesive capsulitis.

Although a close call, Dr. Willis's opinion, considered with Ms. Burns-Herrera's testimony, tips the scales in her favor. The Court holds that State Industries must authorize surgery as recommended by Dr. Willis.

The question then becomes, who shall perform the procedure? Dr. Haslam testified that as a surgeon, he "like[s] to operate," and he is willing to continue treating Ms. Burns-Herrera. Moreover, as State Industries' attorney acknowledged, Dr. Haslam's "timeline is not completed yet," and he did not say he would "never" do surgery, but "now" he does not recommend it. Ms. Burns-Herrera has not seen Dr. Haslam since January 2021. Since then, his opinion might have changed.

At the interlocutory stage of a case, where the authorized physician remains willing to treat an injured worker, the employee is not entitled to a new authorized treating physician. *Baker v. Electrolux,* 2017 TN Wrk. Comp. App. Bd. LEXIS 65, at *8-9 (Oct. 20, 2017). Ms. Burnes-Herrera offered no legal authority to justify her proposed designation of Dr. Willis as the authorized physician; she merely expressed dissatisfaction with Dr. Haslam. This is an insufficient reason under the law, and Dr. Haslam remains her authorized treating physician.

IT IS, THEREFORE, ordered as follows:

1. State Industries shall authorize Ms. Burns-Herrera to return to Dr. Haslam. It shall further authorize Dr. Haslam to perform the recommended surgery. If, however, he is unwilling to do so, State Industries shall offer a panel of orthopedic surgeons willing to treat Ms. Burns-Herrera.

2. A status hearing is set for **August 29, 2022, at 9:45 a.m. Central Time.**  The parties must dial (615) 532-9552 or (866) 943-0025 to participate.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).  The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order.  Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance.  For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED June 21, 2022.**

*Kenneth M. Switzer*

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Hearing Request
4. Notice of Amended Witness List for Expedited Hearing
5. Pretrial Order
6. Employee's Pretrial Brief
7. Employer's Trial Brief
8. Employer's Witness and Exhibit List
9. Employer's Reply Brief

Evidence:
1. Affidavit
2. Joint Exhibit List-Medical Proof
3. Joint Stipulation, February 9, 2022
4. Notice of Stipulations, May 11, 2022
5. Petition for Benefit Determination

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on June 21, 2022.

| Name | Certified Mail | Regular mail | Email | Sent to |
|---|---|---|---|---|
| Stephan Karr, Cindy Harris, Employee's attorneys | | | X | Steve@flexerlaw.com<br>Cindy@flexerlaw.com |
| Lee Anne Murray, Taylor Pruitt, Employer's attorneys | | | X | leeamurray@feeneymurray.com<br>trp@feeneymurray.com<br>jessica@feeneymurray.com<br>Madeline@feeneymurray.com |

_____

**PENNY SHRUM, CLERK**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*